**IN THE**
**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETS**

Michael Black                          :
      petitioner,      :
                         :   PETITION FOR WRIT OF HABEAS CORPUS
                              PURSUANT TO 28 U.S.C. §2241(c)(3)
                         :   WITH INCORPORATED MEMORANDUM IN
                              SUPPORT
v.                                      :
                         :   CASE No.:_____
                         :
                         :   **05-40150 NG**
David L. Winn, Warden                   :
       respondant.       :
                     ooOoo

## PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 USC §2241(c)(3) WITH INCORPORATED MEMORANDUM IN SUPPORT

    **COMES NOW** the petitioner Michael Black, (hereinafter "Black"), under the auspices of all governing Federal Rules of Criminal Procedure before this said Honorable Court.

    Black is proceeding in this matter pro se representation, and is in prayer of a liberal review of his "actual innocence claim". Black respectfully request this Honorable Court to "liberally" construe this pro se petition according to **Haines v. Kerner**, 404 U.S. 519 (1972) (pro se pleading be held to a less stringent standard than from pleading drafted by lawyers).

### INTRODUCTION

    Black hereby states, that first and foremost, he is "actually innocent". To support his claim, Black has submitted the finding

of three United States Appellant Court Judges which unequivicably exonerates Black from the crime and effectively voids Black's conviction and sentence under 21 U.S.C. §846.  Black as well, has also submitted eight other Exhibits as evidence in support of the Appellant Court Judges' finding that clearly support the Judge's finding that unequivicably establish Black's actual innocence.

## JURISDICTION OF THE COURT TO CORRECT AN APPARENT FUNDAMENTAL MISCARRIAGE OF JUSTICE

Black states a §2241 petition is properly brought in the District Court with jurisdiction over the petitioner's custodian, whereas a motion under §2255 must be brought in the sentencing court. See: **United States v. Barrett**, 178 F.3d 34, 50, n. 10 (1st Cir. 1999), cert. denied, 528 U.S. 1176 (2000).

The basis for this distinction is that a Writ of Habeas Corpus under §2241 must be "directed to the person having custody of the person detained." **28 U.S.C. §2243**; **Braden v. 30th Judicial Circuit**, 410 U.S. 484, 499-500 (1973); **Vasquez v. Reno**, 233 F.3d 688, 690 (1st Cir. 2000), cert. denied, sub nom, **Vasquez v. Ashcroft**, 122 S.Ct. 43 (2001) (Court issuing the writ must have personal jurisdiction over the person who holds the petitioner in custody). Accord, **Gonzalez v. United States**, 150 F.Supp.2d 236, 240 (D.Mass. 2001).

Black is in custody in a Federal Prison located in the District of Massachusetts, the custodian over Black is (Warden) David L. Winn and can be located at Federal Medical Center Devens, Post Office Box 879 (P.O. Box 880 for Warden Winn), Ayer, Massachusetts 01432.

Black states that since his claim is that of "actual innocence" and Black is attacking the "execution of the sentence and not the underlying conviction" that the instant motion under §2241 is proper and ripe for ajudication before this Court.  Accord, **United States v. Barrett**, supra;  **Thompson v. United States**, 536 F.2d 459, 460 (1st Cir. 1976);  **Calvache v. Benov**, 183 F.Supp.2d 124, 126 (D.Mass. 2001).  By contrast, §2255 remedy is inadequate or ineffective to correct an apparent fundamental miscarriage of justice as well is a motion to vacate, set aside or correct a sentence under §2255 provides the primary means of a collateral attack on a federal sentence.  See: **United States v. DiRusso**, 535 F.2d 673, 674-676 (1st Cir. 1976) (§2255 grants jurisdiction over post-conviction claims attacking the "imposition" or illegality of the sentence.).

However, Black's claim clearly is that of actual innocence and correcting an apparent fundamental miscarriage of justice.

The First Circuit has observed "A claim of actual innocence-defined as factual innocence, not mere legal insufficiency will have a mechanism for review."  See: **United States v. Barrett**, 178 F.3d at 51 (1st Cir. 1999) (quoting in part) **Charles v. Chandler**, 180 F.3d 753 (6th Cir. 1999).  Other Courts have found the "savings clauses'" application to be similarly narrow.  See: **Paulino v. United States**, 352 F.3d 1056, 1061 (6th Cir. 2003).

The Circuit Court's including this very circuit have interpreted §2241 as permitting relief there under, in lieu of relief under §2255, only in those instances where the individual can make a showing of actual innocence.  See: **United States v. Peterman**, 249 F.3d 458, 462 (6th Cir. 2001) (If petitioner does not make a claim

-3-

for actual innocence they are not entitled to relief through §2255's savings clause). Blacks' exhibits A through I establish that Blacks actual innocence as well will leave this Court with assurance that in fact it has corrected an apparent and fundamental miscarriage of justice.

In an extraordinary case such as this, where a Constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for procedural default. (quoting in part) **Murry v. Carrier**, 477 U.S. 478, 120 L.Ed.2d 269 (1986).

The **Carrier**, supra, standard thus ensures that petitioner's case is truly extraordinary while still providing petitioner a meaningful avenue by which to avoid a manifest injustice. **Id.** @ 836. **Carrier** requires petitioner to show that he is actually innocent. To satisfy the **Carrier** gateway standard, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner's guilt beyond a reasonable doubt. **Id.** @ 836.

In **Bousley v. United States**, 523 U.S. 614, 622 (1988), the Supreme Court further clarified that procedural habeas default can be overcome by demonstrating "either cause and actual prejudice or that he is actually innocent." (citation omitted).

In **Bousley**, supra, although the Court did not find cause, nevertheless remanded the case holding petitioner's "claim may still be reviewed if he can establish that the Constitutional error...has probably resulted in the conviction of one who is actually innocent."

-4-

In this circuit "the habeas court may consider the claim if defendant establishes 'cause and prejudice' with respect to procedural default." See: **Horton v. Allen**, 370 F.3d 75, 81 (1st Cir. 2004).

A procedural default may also be excused if the defendant shows a fundamental miscarriage of justice. i.e. a Constitutional violation that has probably resulted in the conviction of one who is actually innocent. **Horton v. Allen**, supra, citing **Schlup v. Delo**, 513 U.S. 298, 327 (1995).

## THE FACTUAL EVIDENCE THAT ESTABLISHES BLACK'S ACTUAL INNOCENCE

1)    Black's actual innocence is established by a decision of three United States Appellant Judges.  More specifically, the opinions of the Honorable William J. Bauer, the Honorable Richard A. Posner and the Honorable Diane P. Wood determined after a de novo review of the proceedings that the statement of the government's chief non-testifying witness (Mr. Foster) who was also the government's independent source, that was used to actually arrest Black.  The Judges determined that Mr. Foster's statement to the government did not establish the identity of the other caller, who was on the telephone with Mr. Foster.  The Judges unequivicably exonerate Black because the identity of the caller was never known by the government and as the Appellant Court Judges determined, was never established by the government's chief witness who was also the government's independent source.  See:  **Exhibit A** (Judges' Order, dated June 21, 2005).

2)    Black's attorney, Hal Garfinkel, received a letter from
Mr. Foster in which the actual innocence of Black is again established
as well as adding support to the Appellant Judges decision.  Mr.
foster stated to Attorney Garfinkel in his letter that he was
not sure who he was speaking with and that he (Mr. Foster) had
explained this to the prosecution.  See:  **Exhibit B** (Mr. Foster's
letter to Attorney Hal Garfinkel, dated August 24, 1999).

3)    The Government's Investigative Finding Report dated 10/08/98,
Report No. 017 that was approved by Senior Special Agent Ronald J.
states that Mr. Foster identified a person named Richson as the
person he was to deliver the drugs to, and that Richson had been a
U.S. Customs fugitive wanted as a result of his August 1998 indictment
on Federal drug charges.  See:  **Exhibit C** (government's identification
of Emmanuel Richson).

4)    Government transcript number 3 has established Black being
actually innocent by establishing factual evidence that has been
reported and recorded that the government's chief witness, Mr.
Foster, taking his drugs to a location on 130th street prior to his
arrest.  Black lives in a totally different township, miles away.
See:  **Exhibit D** (government transcript number 3, dated 10/1/1999).

5)    Government Report Of Investigation, File No. I 1-98-0240, pg. 4
supports Black's claim of actual innocence by demonstrating that
Mr. Foster's cab driver (Basem Zbaideh) had been instructed by Mr.
Foster prior to his arrest to take Mr. Foster to the hotel where he

-6-

was to pick up the drugs and then deliver them on 130th and Torrence Chicago, Illinois. Black's home is in Riverdale, Illinois, miles away. The government report of investigation clearly proves that Black had no part in the drug conspiracy. See: **Exhibit E** (government report of investigation, date prepared 10/9/98).

**6)** Black states that evidence of his actual innocence is established in the government's proffer of Mr. Foster. Mr. Foster has clearly attempted to tell the prosecutor as well as the leading agent in charge, that he has never enganged in a conversation delaing with drugs before. Mr. Foster was the government's chief witness. However, he tells A.U.S.A. Ryan Stoll at the United States Attorney's Office, he never engaged in a conversation with Black or drug dealt before. See: **Exhibit F** (proffer of Emmanuel Foster, dated 10/26/98).

**7)** In support of Black's claim of being actually innocent, Black supports this claim by showing that on 8/28/2002, the United States Customs Service returns all of Black's funds that the U.S. Attorney's Office had orginally claimed were obtained from profits of a drug conspiracy. Actually the large sum of money was obtained from the large payment of social security benefits due to Black's disability payment and was not obtained illegally but from an unfortunate injury that left Black paralyzed from the chest down up to this very day. See: **Exhibit G** (U.S. Treasury Check, dated 08/28/2002).

**8)** The Prime Company cell-phone number 773-390-2394 which had

-7-

actually called Mr. Foster at the time of his arrest. Prime Co. records reveal that even after Black's arrest, said aforementioned number remained on and had made a total of 84 calls and received a total of 35 incoming calls. Such evidence establishes a very important fact in establishing Black's innocence. Black was in federal custody from 10/2/1998 until 11/19/1998 and the person who had actually called Mr. Foster was still operating. See: **Exhibit H** (Prime Co Cellular Records Program: C1790811, pages 7274-7276).

**9)** The Affidavit of Erroll Bailey who was at Black's home during the time of Black's arrest, establishes a very important fact from a reliable witness who clearly states under the penalty of perjury that no durg transaction of any kind being made at Black's home then nor previously. See: **Exhibit I** (Erroll Bailey's Affidavit).

## REVIEW OF BLACK'S ACTUAL INNOCENCE CLAIM

The United States Supreme Court held, "To establish 'actual innocence' a petitioner must demonstrate that, in light of all the evidence, it is more likely than not, that no reasonable juror would have convicted him." See: **Bousley**, supra, at 1611.

Black states, if this Honorable Court focuses on Black's actual innocence of the substantive offense under which he was charged and convicted or his actual innocence of the prerequisites or aggravating factors in any case, Black is actually innocent. See: **Iannelli v. United States**, 420 U.S. 770, 43 L.Ed.2d 616, 95 S.Ct. 1284 (1975)

-8-

(actually innocent of the essence of conspiracy); **United States v. Cox**, 942 F.2d 1282 (8th Cir. 1991) (actually innocent of the objective of conspiracy); **United States v. Soto**, 716 F.2d 989 (2nd Cir. 1983) (actually innocent as a member of conspiracy); **Morrison v. California**, 291 U.S. 82, 92, 54 S.Ct. 281, 285, 78 L.Ed. 664 (1934).

In all instance, Black is being held in contravention of laws of the United States. This Honorable Court retains jurisdiction to entertain habeas corpus petitions as this because Black is a federal prisoner "in custody in violation of the Constitution or laws or treaties of the United States." See: **The Judiciary Act** of february 5, 1867, Ch. 28 §1, 14 Stat. 385; **Kaufman v. United States**, 394 U.S. 217, 221, 89 S.Ct. 1068, 1071, 22 L.Ed.2d 227 (1969); 28 U.S.C. §2241(c)(3). Black has established the maintainability of his §2241 action. **Schlup**, supra, and its precedents supports such a claim. The only burden that Black now carries is to reconcile his claim with the First Circuit.

However, in order for Black to adequately establish his actual innocence, as well as to litigate such a claim as well as to properly present his evidence of innocence, the appointment of counsel is totally necessary. Black has no training in the science of law as well as a limited education. Surely Black is unqualifed to undertake such a task, as further argument for appointment of counsel, Black is also under funded to procure counsel on his own. Thus, Black would beseech this Honorable Court once again to appoint counsel for Black through the Criminal Justice Act and/or 18 U.S.C. §3006A as Black states that with the aid of counsel in such a case

-9-

as this when he is alone is faced with the interpretation of law
as well as his limited and outdated material he has access to would
be an unsurmountable task for Black and thus appointment of counsel
is compulsory in order to accomplish justice as well as preserve
any further miscarriage of justice.

## CONCLUSION

Black's claim is that of being actually innocent.  If this
Honorable Court has found support in Black's claim by the Appellant
Judges decision, or in the government's very own reports of
investigation identifying other people and other locations or if
Black's actual innocence has been established by the statement and
proffer of Mr. Foster himself, or in the simple account of an
eyewitness or the return of funds. Black states that if only legal
insufficiency rather than factual innocence has been established in
any case, an apparent fundamental miscarriage of justice has occurred
and has been presented to this Honorable Court by Black then an
immediate remedial and healing application of law must be accorded
to Black forthwith and without undue delay.


Dated this the _2a^{th}_ day of _Aug_ 2005.


                              Respectfully Submitted,

                              _Michael Black_
                              Michael Black (pro se)
                              Reg. No. 11354-424
                              F.M.C. Devens
                              P.O. Box 879
                              Ayer, MA  01432

# PROOF OF SERVICE

I, ___Michael Black_____, certify that on ___August_____,
200_5_ I mailed a copy of this document and all attachments via First Class mail to the following
parties **at the addresses listed below:**

> David L. Winn, Warden
> Federal Medical Center-Devens
> P.O. Box 880
> Ayer, Massachusetts
> 01432

# PROOF OF SERVICE FOR INCARCERATED LITIGANTS

In addition to the above Proof of service, all litigants who are currently incarcerated should
include the following statement with all documents to be filed with the court:

I certify that this document was given to officials[1] on this date for forwarding to the United
States District Court for the District of ___Massachusetts-Boston Division___. I further certify
under penalty of perjury that the forgoing is true and correct. **Title 28 U.S.C. § 1746.**

Respectfully submitted this __22 th__ day of ___August_____, 200_5_.

Name: Michael Black_____
Number: 11354-424_____
FMC Devens, Unit _____
P.O. Box 879
Ayer, Massachusetts 01432

---

[1] Pleadings by prisoners who represent themselves are to be considered filed at the moment such pleadings are delivered to
prison authorities for forwarding to clerk. **Houston v Lack.** 487 U.S. 266 (1988).

## EXHIBIT INDEX

PAGE(S)

1.  **Exhibit A** (Appellant Judges' Order)..........................1

2.  **Exhibit B** (Mr. Foster's letter to Attorney Hal Garfinkel).....2,3

3.  **Exhibit C** (Government's identification of Emmanuel Richson)...4

4.  **Exhibit D** (Government Transcript No. 3).......................5,6

5.  **Exhibit E** (Government File No. I1-98-0240)...................7

6.  **Exhibit F** (Proffer of Emmanuel Richson)......................8,9,10

7.  **Exhibit G** (U.S. Treasury check)..............................11

8.  **Exhibit H** (Prime Co. Cellular Record).......................12,13,14

9.  **Exhibit I** (Affidavit of Erroll Bailey)......................15

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted June 13, 2005
Decided June 21, 2005

Before

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

No. 05-2731

| | |
|---|---|
| MICHAEL BLACK,<br>    *Applicant,*<br><br>    *v.*<br><br>UNITED STATES OF AMERICA,<br>    *Respondent.* | On Motion for an Order Authorizing the District Court to Entertain a Second or Successive Motion for Collateral Review |

## O R D E R

Michael Black has filed an application pursuant to 28 U.S.C. § 2244(b)(3), seeking authorization to file a second or successive collateral attack under 28 U.S.C. § 2255. Black proposes another collateral attack, relying on *Crawford v. Washington*, 541 U.S. 36 (2004). But the partial transcript he submits in support of his proposed claim shows that Agent Forler's testimony about Mr. Foster's statement does not violate *Crawford*. Judge Rosemond explicitly held that the statement was non-hearsay because not used to establish its truth; he then instructed the jury to limit its consideration of the statement to the fact that it was said and influenced Agent Forler's investigation, and that Foster's statement did not establish the identity of the other caller.

Accordingly, we DENY Black's application for permission to file a second collateral attack.

Emmanuel Foster,
#10233 - 424,
M. C. C. Chicago.
08/24/99.

Dear Sir,
Mr Hai, Garfinkel.
11 · W. Washington,
CH . IL · 60606.

I am one of Co-defender of Your
Client, Mr M. Black.
Which I' will Like to Set Some few things
Straight.        Firstly, I' Like to make sure that
their no Pkoblem between me and your
Client.        Secondly, The whole thing was started
by C.korre Egella. and he mention your
Client name, and by the time I' got to
the Hotel, which I' have no other
Choice but to Co-operat with agent.
The Idea of the Phone Call was brought
up by the agent.
And everything I' Say was written down by
agent, I' wasn't sure who I' was
Speaking to on the Phone either.
And I' explain everything in my profter

I' will greatfully if you Carefull
Look into this matther Please.

Thank you for your co-operation and
looking forward to hear from you.

faithfully
E Foster

P. 3

TITLE: NASCY NARESGO41

CASE STATUS:   INTERIM RPT

| . REPORT DATE | 7. DATE ASSIGNED | 8. CLASS | 9. PROGRAM CODE | 10. REPORT NO. |
|---|---|---|---|---|
| 100898 | 061198 | 1 | 301 | 017 |

1. RELATED CASE NUMBERS:   CH13RE98CH0067

2. COLLATERAL REQ:

3. TYPE OF REPORT:
   INVESTIGATIVE FINDINGS

TOPIC: IDENTIFICATION OF EMMANUAL RICHSON

4. SYNOPSIS:
On September 29, 30, and October 1, 1998, agents and TFO's of the
SAC, Chicago, O'Hare Group, and DEA, performed a controlled delivery of
approximately 530g of heroin and arrested Okorie EGELLE, KINGSLEY LNU, Taiwo
OLUDURO, and EMMANUEL FOSTER and Emmanuel RICHSON aka KINGSLEY LNU, all
Nigerian nationals residing in Chicago, Illinois.  At the time of his arrest,
RICHSON identified himself as James OREYE.  All of those individuals were
mirandized and interviewed after being arrested.  EGELLE, OLUDURO and FOSTER
identified RICHSON as the person whom the heroin was to be delivered.
RICHSON had been a U.S. Customs fugitive wanted as a result of his August,
1998, indictment on Federal drug charges.

The following report details the identification of RICHSON aka KINGSLEY LNU
as James OREYE by agents and cooperating defendants in this investigation.
Investigation continues.

| 15. DISTRIBUTION:  SACCH | 16. SIGNATURE:  FORLER | CARLEEN   M   SPECIAL AGENT |
|---|---|---|
| | 17. APPROVED:  TYE | RONALD   J   SENIOR SPEC AGENT |
| | 18. ORIGIN OFFICE: CH  CHICAGO - SAC | 19. TELEPHONE: 312 353 8450 |
| | | 20. TYPIST: FORLER |

P. 4

```
DATE:          October 1, 1998
TIME:          7:40 AM
ACTIVITY:      Incoming telephone call to #708-418-3700
LOCATION:      Sleep Inn Hotel, Rm # 217, Lansing, Illinois
EXHIBIT:       Transcript #3

SPEAKERS:
EGELLE:        Okorie Egelle aka Mickey aka Michael
FOSTER:        Emmanuel Foster aka Akee
```

\*        \*        \*        \*        \*

1  EGELLE:   (PHONE RINGS) Hello

2  FOSTER:   Hello

3  EGELLE:   Yeah

4  FOSTER:   Mikky?

5  EGELLE:   Huh?

6  FOSTER:   How are you?

7  EGELLE:   I am fine.

8  FOSTER:   Yeah.

9  EGELLE:   Where are you?

10  FOSTER:  I am... I am at the program I am... what do you call
             it...I am at the lecture.

11  EGELLE:  What?

12  FOSTER:  I am at a lecture.

13  EGELLE:  Lecture?

14  FOSTER:  Yes. What's up?

15  EGELLE:  Nothing, nothing.

16  FOSTER:  Really?

17  EGELLE:  Yeah.

18  FOSTER:  So what is happening now?

19  EGELLE:  I am fine now.

20  FOSTER:  Uhun? Where's the other guy?

GOVERNMENT
EXHIBIT

3

P. 5

1   EGELLE:   Yes.

2   FOSTER:   Where are you going?

3   EGELLE:   (HISSES) I want to check out of here.

4   FOSTER:   Where are you going, where are you going?

5   EGELLE:   Where am I going?

6   FOSTER:   Yes.

7   EGELLE:   I want to come over to that side now.

8   FOSTER:   Should I wait for you on this side?

9   EGELLE:   But I cannot carry this thing now.

10  FOSTER:   You know what I mean... do you know what I want to say?

11  EGELLE:   Yes.

12  FOSTER:   We can meet up around hundred and thirty (130), hundred and thirty (130) street.

13  EGELLE:   Hundred and thirty (130) street?

4   FOSTER:   Yeah.

15  EGELLE:   Where is hundred and thirty (130) street?

16  FOSTER:   Say... hundred and thirty (130) and Indiana. That's the area I am going exactly.

17  EGELLE:   The problem is that I am not holding any money in my pocket.

18  FOSTER:   Yeah, but if I reach that area, I'll just... you just call cab. I will just come and meet you.  I will just pay for your cab.

19  EGELLE:   How will I... hundred and thirty (130)... where at?

20  FOSTER:   I'll tell you if you want to come, if you want meet up.

21  EGELLE:   Uh.

22  FOSTER:   What?

23  EGELLE:   Will I take a taxi there?

5

P. 6

U.S. Department of Justice
Drug Enforcement Administration

## REPORT OF INVESTIGATION
*(Continuation)*

4.

Page   4   of   6

5. Program Code

| 1. File No. | 2. G-DEP Identifier |
|---|---|
| I1-98-0240 | UVH1I |

3. File Title
OBAYEMI, Taiwo B.

6. Date Prepared
10/15/98

10.  SA's Crawford and Stewart spoke with Basem Zbaideh, the taxi driver for Yellow Cab.  Zbaideh stated that he picked up FOSTER in the area of 51st and Woodlawn  Chicago, IL.  Zbaideh stated that he was instructed by FOSTER to drive him to the Sleep Inn Hotel, Lansing, IL.  Zbaiden was further instructed by FOSTER to wait at the hotel, and then to drive him (FOSTER) to 130th and Torrence  Chicago  IL.

DEA SENSITIVE.
Drug Enforcement Administration
This report is the property of the Drug Enforcement Administration.
Neither it nor its contents may be disseminated outside the agency to which loaned.
Previous edition dated 5/80 may be used.

-6a

gm930

4-Extra

P7

O F F I C I A L   U S E   O N L Y

| | |
|---|---|
| DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N | 1. TECS ACCESS CODE 3<br><br>2. PAGE    1<br><br>3. CASE NUMBER  CH13HE98CH0067 |

4. TITLE: MICHAEL EGELLE AND TAIWO OLUDURO

5. CASE STATUS:    INTERIM RPT

| 6. REPORT DATE | 7. DATE ASSIGNED | 8. CLASS | 9. PROGRAM CODE | 10. REPORT NO. |
|---|---|---|---|---|
| 120198 | 093098 | 1 | 019 | 010 |

11. RELATED CASE NUMBERS:   CH13HE98CH0052

12. COLLATERAL REQ:

13. TYPE OF REPORT:
   MEMO OF INTERVIEW

TOPIC: PROFFER OF EMMANUEL FOSTER

14. SYNOPSIS:
On September 29, 30, and October 1, 1998, agents and TFO's of the
SAIC/Chicago, O'Hare Group, and DEA, performed a surveillance and
controlled delivery of approximately 530g of heroin and arrested
Okorie EGELLE, Taiwo OLUDURO, Emmanuel FOSTER and Emmanuel
RICHSON aka KINGSLEY LNU aka James OREYE, all Nigerian nationals
residing in Chicago, Illinois.  During post arrest interviews,
EGELLE and FOSTER identified Michael BLACK aka MOHAMMED LNU as
the street level distributor of the drugs.  BLACK was later
arrested on a Federal arrest warrant issued as a result of the
conspiracy.

On October 26, 1998, Emmanuel FOSTER was interviewed at the
United States Attorney's Office in Chicago, Il.  The following
report provides details of that interview.

| | |
|---|---|
| 15. DISTRIBUTION:<br>SACCH | 16. SIGNATURE:  *Carleen M. Forl*<br>   FORLER        CARLEEN    M  SPECIAL AGENT |
| | 17. APPROVED:  *Lawrence E. Dennelly*<br>   DENNELLY      LAWRENCE   E OI GRP SUPERVISOR |
| | 18. ORIGIN OFFICE: CH     19. TELEPHONE: 773 825 5712<br>   CHICAGO - SAC<br>                           20. TYPIST: FORLER |

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

P 8

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | °1. PAGE    2 |
| | °2. CASE NUMBER CH13HE98CH0067 |
| | °3. REPORT NUMBER: 010 |

DETAILS OF INVESTIGATION:

On September 29, 30, and October 1, 1998, agents and TFO's of the
SAIC/Chicago, O'Hare Group, and DEA/Chicago, performed a
surveillance and controlled delivery of approximately 530g of
heroin and arrested Okorie EGELLE, Taiwo OLUDURO, Emmanuel FOSTER
and Emmanuel RICHSON aka KINGSLEY LNU aka James OREYE.  EGELLE
and FOSTER cooperated and identified Michael BLACK aka MOHAMMED
LNU as the individual who was to ultimately receive the heroin.

On October 2, 1998, BLACK was arrested at his residence in
Riverdale, Illinois, as a result of a Federal arrest warrant
issued in the Northern District of Illinois.

On October 26, 1998, Emmanuel FOSTER was debriefed at the United
States Attorney's Office in Chicago, Il.  Present during the
interview were AUSA Ryan Stoll, SA Carleen Forler, DEA SA Dan
Snyder and FOSTER's attorney, Steven Pick.

Prior to the interview, AUSA Stoll explained the proffer
agreement to FOSTER.  FOSTER signed the agreement and stated he
understood it and was willing to continue with the interview.
The following is a non-verbatim summary the statements made by
FOSTER during the interview:

Before answering any questions, FOSTER expressed concerns about
having to testify in the future, stating he feared for his safety
and the safety of his family.  FOSTER related that one of the
individuals who he was previously asked about during this
investigation is in Africa and know's FOSTER's family.

AUSA Stoll questioned FOSTER about how he became involved with
individuals who smuggled herpin into the United States.  FOSTER
stated that he used to know "Aigbe," (identified as Aigbe
UWADIALE), before UWADIALE traveled out of the U.S.  They met on
the south side of Chicago through a mutual friend named TJ LNU.
FOSTER used to live with TJ LNU and UWADIALE occasionally visited
TJ LNU.  TJ LNU has since returned to Africa.

FOSTER stated that, UWADIALE is also called Mike LNU.  According
to FOSTER, UWADIALE traveled to Africa in March 1998, and
returned to the U.S. in June 1998.  After returning to the U.S.,
UWADIALE stayed in a Motel and was supposed to again return to
Africa.  UWADIALE traveled again and FOSTER has not seen him

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPER
THE US CUSTOMS SERVICE.  ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUME'
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTO?
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF THE TREASURY<br>UNITED STATES CUSTOMS SERVICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | 1. PAGE    6 |
|---|---|
| | 2. CASE NUMBER CH13HE98CH0067 |
| | 3. REPORT NUMBER: 010 |

that had he known UWADIALE was a drug dealer, he wouldn't have
used UWADIALE's pager and would have run away.

FOSTER stated that UWADIALE told him he was broke and didn't even
have enough money to fix the brakes on his vehicle. UWADIALE
owned a Cherokee and was in the business of shipping cars to
Africa. FOSTER confirmed that UWADIALE purchased a Toyota Land
cruiser for an unknown individual and drove it around to show
off.
FOSTER could not explain how UWADIALE purchased the vehicles to
export.

FOSTER was asked about his dealings with BLACK and why BLACK was
so comfortable dealing with him if FOSTER had never previously
delivered drugs to BLACK. FOSTER stated that prior to him
picking up the drugs from EGELLE, RICHSON called BLACK and BLACK
subsequently contacted FOSTER. RICHSON told BLACK that FOSTER
would be coming over with the drugs. FOSTER could not explain
why BLACK was willing to leave RICHSON out of the deal during the
recorded telephone conversations. FOSTER stated that he was
directed by agents to speak to BLACK in an open manner, and BLACK
was willing to deal with him. FOSTER denied that he and BLACK
had ever engaged in this type of conversation or drug deal
before.

FOSTER repeated his previous statements about how he came to know
that UWADIALE was involved in heroin trafficking. FOSTER then
described the events leading to his arrest. His involvement
began the evening before his arrest when FOSTER spoke to RICHSON
who told him to meet EGELLE. FOSTER agreed to this and was
supposed to receive $500. FOSTER stated that RICHSON asked him
to do this because RICHSON was aware that FOSTER wanted to get
married and was short of money. Upon receiving the drugs,
RICHSON told FOSTER to take it (the drugs) to the guy (BLACK).
FOSTER denied knowledge of where the drugs came from and of
EGELLE's travels to Canada.

FOSTER described in detail how he on the evening prior to his
arrest, RICHSON called FOSTER at approximately 11:00 p.m. at
night and asked FOSTER if he could get a vehicle for the next
day. RICHSON does not have a driver's license and needed a car
for the following morning.

The next morning, RICHSON called FOSTER and told him to go and
pick up EGELLE and the stuff and bring the stuff to Hyde Park (a

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF
THE US CUSTOMS SERVICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR
INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO HEADQUARTERS, US CUSTOMS
SERVICE TOGETHER WITH A COPY OF THE DOCUMENT.
P 10

U.S. Customs Service/FP&F
610 South Canal Street, RM 416
Chicago, IL 60607



7001 0360 0000 1924 6588

RETURN RECEIPT REQUESTED

Michael Black – Inmate # 11354-424
Butner FMC
Old North Carolina Highway 75
P.O. Box 1600
Butner, NC 27509

TO BE OPENED BY ADDRESSEE ONLY

FMC BUTNER *LIMITED OFFICIAL USE*
TRANSACTION NO. T102243
STATION NO. 60



RECEIVED FROM \ DISBURSED TO

SIGNATURE OF RECEIVING OFFICER

DATE:08/28/02

REGISTER NO:11354424
    NAME:BLACK, MICHAEL – Box No.

TRANSACTION TYPE:U.S. TREASURY CHECK
    AMOUNT:$3,910.00



All negotiable instruments other than U.S. government checks, state
government checks, postal money orders, and checks from privately
contracted correctional facilities are accepted subject to collection.

Original – To Accounting / COPY – To Inmate

P. 11

P R E P A Y   M E S S A G E   D E T A I L
AMCI – CHICAGO RETAIL

DATE: 981028
TIME: 14152417

| MOBILE NUM | TRAN NUM | CALL START DATE | TIME | NUMBER DIALED | LENGTH | CHARGE |
|---|---|---|---|---|---|---|
| 7733902394 | 91028782 | 10/02/98 | 19153115 | INCOMING | 1:00 | .55 |
| 7733902394 | 91031953 | 10/02/98 | 20114133 | 7681053 | 1:00 | .55 |
| 7733902394 | 91032921 | 10/02/98 | 20116439 | 7088493159 | 3:00 | 1.65 |
| 7733902394 | 91033373 | 10/02/98 | 20119146 | INCOMING | 3:00 | 1.65 |
| 7733902394 | 91034394 | 10/02/98 | 20125159 | 7681053 | 1:00 | .55 |
| 7733902394 | 91035075 | 10/02/98 | 20133141 | 8478451411 | 1:00 | .55 |
| 7733902394 | 91036605 | 10/02/98 | 20138124 | 8478451411 | 1:00 | .55 |
| 7733902394 | 91037459 | 10/02/98 | 20142130 | 8478451411 | 1:00 | .55 |
| 7733902394 | 91037803 | 10/02/98 | 20144139 | INCOMING | 1:00 | .55 |
| 7733902394 | 91037921 | 10/02/98 | 20145106 | INCOMING | 1:00 | .55 |
| 7733902394 | 91046713 | 10/02/98 | 21147153 | INCOMING | 1:00 | .55 |
| 7733902394 | 91133938 | 10/03/98 | 13159104 | 7736516827 | 1:00 | 1.10 |
| 7733902394 | 91134805 | 10/03/98 | 14103140 | 7658640 | 1:00 | .55 |
| 7733902394 | 91136357 | 10/03/98 | 14110121 | 7087050840 | 2:00 | 1.10 |
| 7733902394 | 91137749 | 10/03/98 | 14117154 | 5159280 | 1:00 | .55 |
| 7733902394 | 91142026 | 10/03/98 | 14118112 | 6600984 | 2:00 | 1.10 |
| 7733902394 | 91142572 | 10/03/98 | 14140137 | 7086621535 | 2:00 | 1.10 |
| 7733902394 | 91144275 | 10/03/98 | 14148135 | 6600984 | 2:00 | 1.10 |
| 7733902394 | 91177823 | 10/03/98 | 17108107 | 6516827 | 1:00 | .55 |
| 7733902394 | 91174075 | 10/03/98 | 17126145 | 7087050840 | 2:00 | 1.10 |
| 7733902394 | 91184419 | 10/03/98 | 17158156 | 7087050840 | 1:00 | .55 |
| 7733902394 | 91185805 | 10/03/98 | 18104156 | 2648466 | 2:00 | 1.10 |
| 7733902394 | 91186724 | 10/03/98 | 18110104 | 603475 | 1:00 | .55 |
| 7733902394 | 91187107 | 10/03/98 | 18111127 | 2648466 | 1:00 | .55 |
| 7733902394 | 91198250 | 10/03/98 | 19104151 | 2648466 | 1:00 | .55 |
| 7733902394 | 91201750 | 10/03/98 | 19123102 | 7087050840 | 1:00 | .00 |
| 7733902394 | 91202062 | 10/03/98 | 19124154 | 7088495931 | 1:00 | 1.10 |
| 7733902394 | 91202465 | 10/03/98 | 19126143 | 7088493159 | 2:00 | 1.65 |
| 7733902394 | 91203325 | 10/03/98 | 19129158 | 2648466 | 3:00 | 1.10 |
| 7733902394 | 91203008 | 10/03/98 | 19133117 | 7088493159 | 2:00 | 1.10 |
| 7733902394 | 91204455 | 10/03/98 | 19136122 | 6600984 | 2:00 | 1.10 |
| 7733902394 | 91274123 | 10/04/98 | 12107140 | 7086621535 | 2:00 | 1.10 |
| 7733902394 | 91295567 | 10/04/98 | 14114126 | 5159280 | 2:00 | .55 |
| 7733902394 | 91320520 | 10/04/98 | 17132111 | 7087050840 | 1:00 | 1.10 |
| 7733902394 | 91326044 | 10/04/98 | 18101134 | 7732305054 | 1:00 | 1.10 |
| 7733902394 | 91401793 | 10/05/98 | 12115145 | 6600984 | 6:00 | 3.30 |
| 7733902394 | 91452240 | 10/05/98 | 17142146 | 8478450777 | 2:00 | 1.10 |
| 7733902394 | 91459748 | 10/05/98 | 17146102 | 7088493159 | 3:00 | 1.65 |
| 7733902394 | 91471223 | 10/05/98 | 18143118 | 7832429 | 3:00 | 1.65 |
| 7733902394 | 91473203 | 10/05/98 | 18155147 | 5159280 | 1:00 | .55 |
| 7733902394 | 91473037 | 10/05/98 | 18159129 | 7832429 | 1:00 | .55 |

DATE: 981020
TIME: 14152117

PREPAY MESSAGE DETAIL
AMCI - CHICAGO RETAIL

***C 10***

| MOBILE NUM | TRAN NUM | CALL DATE | START TIME | NUMBER DIALED | LENGTH | CHARGE |
|---|---|---|---|---|---|---|
| 7733902394 | 91476604 | 10/05/98 | 19115142 | 6600904 | 1:00 | .55 |
| 7733902394 | 91476921 | 10/05/98 | 19116154 | 6600904 | 2:00 | 1.10 |
| 7733902394 | 91499650 | 10/05/98 | 19136105 | 5159280 | 1:00 | .55 |
| 7733902394 | 91497643 | 10/05/98 | 21154143 | 8478458777 | 1:00 | .55 |
| 7733902394 | 91499502 | 10/05/98 | 22111153 | 4838048 | 3:00 | 1.65 |
| 7733902394 | 91499771 | 10/05/98 | 22116149 | 4838048 | 1:00 | .55 |
| 7733902394 | 91539555 | 10/06/98 | 11120156 | INCOMING | 1:00 | .55 |
| 7733902394 | 91575055 | 10/06/98 | 15114157 | INCOMING | 1:00 | .55 |
| 7733902394 | 91575278 | 10/06/98 | 15117101 | 4838048 | 1:00 | .55 |
| 7733902394 | 91600772 | 10/06/98 | 17122120 | 7237540 | 1:00 | .55 |
| 7733902394 | 91615669 | 10/06/98 | 18136109 | 4193448 | 2:00 | 1.10 |
| 7733902394 | 91624304 | 10/06/98 | 19125148 | 7084893159 | 2:00 | 1.10 |
| 7733902394 | 91644056 | 10/06/98 | 22101139 | INCOMING | 1:00 | .55 |
| 7733902394 | 91645413 | 10/06/98 | 22106122 | 8804235128 | 1:00 | .55 |
| 7733902394 | 91704360 | 10/07/98 | 13144120 | 8730292 | 0:00 | .00 |
| 7733902394 | 91704557 | 10/07/98 | 13145151 | 9331304 | 1:00 | .55 |
| 7733902394 | 91734791 | 10/07/98 | 16136139 | 5512651 | 1:00 | .55 |
| 7733902394 | 91762147 | 10/07/98 | 18114917 | INCOMING | 2:00 | 1.10 |
| 7733902394 | 91786394 | 10/07/98 | 19113133 | INCOMING | 1:00 | .55 |
| 7733902394 | 91782035 | 10/07/98 | 21101109 | 7085962911 | 1:00 | .55 |
| 7733902394 | 91782166 | 10/07/98 | 21102104 | 3610069 | 1:00 | .55 |
| 7733902394 | 91785560 | 10/07/98 | 21112113 | INCOMING | 1:00 | .55 |
| 7733902394 | 91795116 | 10/07/98 | 23108137 | 7231284 | 1:00 | .55 |
| 7733902394 | 91795470 | 10/07/98 | 23113121 | INCOMING | 1:00 | .55 |
| 7733902394 | 91795980 | 10/07/98 | 23121127 | INCOMING | 1:00 | .55 |
| 7733902394 | 91796246 | 10/07/98 | 23125130 | 4458965 | 1:00 | .55 |
| 7733902394 | 91797191 | 10/07/98 | 23139154 | INCOMING | 3:00 | 1.65 |
| 7733902394 | 91790095 | 10/08/98 | 00101125 | 3071038 | 3:00 | 1.65 |
| 7733902394 | 91790365 | 10/08/98 | 00104139 | 7084412966 | 1:00 | .55 |
| 7733902394 | 91806808 | 10/08/98 | 07124133 | INCOMING | 2:00 | .00 |
| 7733902394 | 91840793 | 10/08/98 | 13140152 | INCOMING | 1:00 | .55 |
| 7733902394 | 91935530 | 10/08/98 | 21140111 | 7093282667 | 3:00 | 1.65 |
| 7733902394 | 92110080 | 10/10/98 | 06116106 | 5512651 | 1:00 | .00 |
| 7733902394 | 92226100 | 10/10/98 | 16144157 | 7084893159 | 1:00 | .55 |
| 7733902394 | 92235080 | 10/10/98 | 19118150 | INCOMING | 2:00 | 1.10 |
| 7733902394 | 92264232 | 10/10/98 | 19124111 | INCOMING | 1:00 | .55 |
| 7733902394 | 92264061 | 10/10/98 | 19125104 | 4193448 | 1:00 | .55 |
| 7733902394 | 92264253 | 10/10/98 | 23115142 | INCOMING | 1:00 | .55 |
| 7733902394 | 92299155 | 10/10/98 | 23137102 | INCOMING | 1:00 | .55 |
| 7733902394 | 92301291 | 10/10/98 | 23138114 | 4413768 | 1:00 | .55 |
| 7733902394 | 92301442 | | | | | |

PREPAY MESSAGE DETAIL
AMC1 - CHICAGO RETAIL

DATE: 981028
TIME: 1415217

| MOBILE NUM | TRAN NUM | CALL DATE | START TIME | NUMBER DIALED | LENGTH | CHARGE |
|---|---|---|---|---|---|---|
| 7733902394 | 92303190 | 10/10/98 | 23157132 | 7737535039 | 2:00 | 1.10 |
| 7733902394 | 92384254 | 10/11/98 | 17158149 | 8884295128 | 0:00 | .00 |
| 7733902394 | 92384254 | 10/11/98 | 17158149 | 8884295128 | 0:00 | .00 |
| 7733902394 | 92387954 | 10/11/98 | 18122105 | 8884295128 | 0:00 | .00 |
| 7733902394 | 92387954 | 10/11/98 | 18122105 | 8884295128 | 0:00 | .00 |
| 7733902394 | 92413219 | 10/11/90 | 21142116 | 3126803664 | 1:00 | .55 |
| 7733902394 | 92413219 | 10/11/98 | 21142116 | 3126803664 | 1:00 | .55 |
| 7733902394 | 92413422 | 10/11/98 | 21143121 | INCOMING | 2:00 | 1.10 |
| 7733902394 | 92413422 | 10/11/98 | 21143121 | INCOMING | 2:00 | 1.10 |
| 7733902394 | 92421977 | 10/11/98 | 23135154 | 2249525 | 1:00 | .55 |
| 7733902394 | 92421977 | 10/11/98 | 23135154 | 2249525 | 1:00 | .55 |
| 7733902394 | 92422647 | 10/11/98 | 23140123 | 4935139 | 2:00 | 1.10 |
| 7733902394 | 92422647 | 10/11/98 | 23140123 | 4935139 | 2:00 | 1.10 |
| 7733902394 | 92422743 | 10/11/98 | 23150134 | INCOMING | 3:00 | 1.65 |
| 7733902394 | 92422743 | 10/11/98 | 23150134 | INCOMING | 3:00 | 1.65 |
| 7733902394 | 92423023 | 10/11/98 | 23157153 | INCOMING | 1:00 | .55 |
| 7733902394 | 92423023 | 10/11/98 | 23157153 | INCOMING | 1:00 | .55 |
| 7733902394 | 92423409 | 10/12/98 | 00157117 | 2416272 | 1:00 | .55 |
| 7733902394 | 92425202 | 10/12/98 | 01108155 | INCOMING | 1:00 | .55 |
| 7733902394 | 92524139 | 10/13/98 | 18144155 | 2647731 | 1:00 | .55 |
| 7733902394 | 92666549 | 10/13/98 | 21140138 | INCOMING | 1:00 | .00 |
| 7733902394 | 92670584 | 10/14/98 | 17148120 | 4400088 | 1:00 | .55 |
| 7733902394 | 92810669 | 10/14/98 | 20158139 | INCOMING | 2:00 | 1.10 |
| 7733902394 | 92819015 | 10/14/98 | 21102116 | INCOMING | 2:00 | 1.10 |
| 7733902394 | 92819356 | 10/14/98 | 21105142 | INCOMING | 1:00 | .55 |
| 7733902394 | 92825185 | 10/14/98 | 21158155 | 7231284 | 1:00 | .55 |
| 7733902394 | 93119816 | 10/16/98 | 19115143 | INCOMING | 1:00 | .55 |
| 7733902394 | 93127697 | 10/16/98 | 19152116 | INCOMING | 1:00 | .55 |
| 7733902394 | 93133233 | 10/16/98 | 20119104 | INCOMING | 1:00 | .55 |
| 7733902394 | 93156606 | 10/16/98 | 20130142 | 6438785 | 1:00 | .55 |
| 7733902394 | 93142665 | 10/16/98 | 21109154 | 4932714 | 1:00 | .00 |
| 7733902394 | 93159032 | 10/16/98 | 22154119 | 3071038 | 1:00 | .00 |
| 7733902394 | 93159300 | 10/16/98 | 22156120 | 3071038 | 1:00 | .00 |
| 7733902394 | 93160115 | 10/16/98 | 22159148 | INCOMING | 4:00 | 2.20 |
| 7733902394 | 93161234 | 10/16/98 | 23110126 | INCOMING | 4:00 | 2.20 |
| 7733902394 | 93161645 | 10/16/98 | 23115142 | 6438785 | 1:00 | .55 |
| 7733902394 | 93162255 | 10/16/98 | 23124155 | INCOMING | 1:00 | .55 |
| 7733902394 | 93163253 | 10/16/98 | 23120132 | INCOMING | 1:00 | .55 |
| 7733902394 | 93163428 | 10/16/98 | 23131115 | 6438785 | 1:00 | .55 |
| 7733902394 | 93163714 | 10/16/98 | 23133133 | 4193440 | 1:00 | .55 |
| 7733902394 | 93164336 | 10/16/98 | 23139116 | INCOMING | 1:00 | .55 |

***ID***

STATE OF ILLINOIS:

::SS::                Affidavit of Erroll Bailey

COUNTY OF COOK    ::

I, Erroll Bailey, being duly sworn according to law, hereby state that the following statement is true and accurate to the best of my knowledge, information and belief and being made freely without any promise of favor, nor threat of punishment:

1. I was at Michael Black's home at 14028 South Tracy Riverdale, Illinois, at the time of Mr. Black's arrest.

2. I was soon to be released only minutes later.

3. I came to Mr. Black's home on a daily basis as I am a friend of the family.

4. I helped Mr. Black by taking him out to stores and pet shop.

5. I also helped with any repairs and chores that needed to be done around Mr. Black's home.

6. At no time did I ever witness any drug deal at Mr. Black's home.

7. On the date of Mr. Black's arrest, I was at Mr. Black's home, and there was no drug transaction of any kind being made then or previously.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statement is true and correct.

DATED: 1/11/03                    /s/ Erroll Bailey

NOTARY PUBLIC: Anita Blackburn        ERROLL BAILEY

My Commission Expires: 4/2/05

"OFFICIAL SEAL"
ANITA BLACKBURN
Notary Public, State of Illinois
My Commission Expires April 2, 2005

P. 15